W. B. FLEMING and Wife, MOLLIE L.; DORA L. BROWN, JOHN L.
BROWN, JR., and LENA BROWN v. ARTHUR BARDEN
and Wife, MAGGIE S.

(Decided May 1, 1900.)

*Deed to Trustee for Wife and Children—Mortgage by Wife
for Husband's Debt—Extension of Time by Creditor for
Consideration Paid by Principal Debtor—Discharge of
Security—Invalid Sale by Mortgagee.*

1. A deed to trustee made by a husband for benefit of his wife for life,
then for their children, and upon failure of children living at
her death, then for himself, his heirs and devisees, and containing
a stipulation that he and his wife, with consent of each other,
and joined by the trustee, might unite in a conveyance of the land
at any time, absolutely in fee, or otherwise, will authorize a mort-
gage for a debt of the husband.

2. A payment of an additional sum by the debtor, after death of his wife,
for a year's extension of time of payment amounts to a discharge
of the land, as security, so far as concerns the rights of the
children, and the fact that the additional payment amounted to
usurious interest upon the debt, does not affect the result.

3. Nor will the fact that the wife was dead when this agreement for
extension of time was made, prevent the discharge of the mort-
gage. The discharge is by operation of law, and applies in all
such cases.

4. The proposition of law, that where the trustee is barred, the *cestui
que trust* is also barred, has no application when the trustee, in
accordance with a provision of the trust, passes his bare legal title
to another, in this instance to the mortgagee of the husband, and
there was nothing to descend to his heirs, at his death, which
occurred previous to the extension of time of payment.

5. The land, as security, being discharged from the payment of the debt
by reason of the extension of time, the mortgagee had no right
to sell under the mortgage, and the defendant who claimed under
the purchaser acquired no other right than she would have
acquired at a sale by a mortgagee after the debt was paid, which
right, although accompanied by possession, would not ripen
against the plaintiffs, one of them under the disability of cover-
ture, and the rest being infants.

CIVIL ACTION for possession of land, tried before *Starbuck, J.*, at November Term, 1899, of the Superior Court of BEAUFORT County.

The plaintiffs, children of John L. Brown and wife, Maria L. Brown, claim under a deed from their father made, in June, 1880, to Ashley Congleton, trustee, for the benefit of their mother for life, and for their benefit at her death, and should none of them be then living, for his own benefit in fee. There was a provision in the deed that he and his wife, with mutual consent, and joined by the trustee, might convey the property absolutely at any time in fee simple or otherwise.

On February 9, 1881, John L. Brown and wife, and trustee, Congleton, joined in a mortgage on the land to Joseph B. Stickney to secure a debt of $500 due him from John L. Brown.

Mrs. Brown died in August, 1884, leaving the plaintiffs, her children, under age—the oldest married to W. B. Fleming, the others being still minors at the institution of this suit, in 1897. Shortly after the death of Mrs. Brown, the mortgage debt being still unpaid, the debtor, John L. Brown, obtained an extension of time for twelve months by paying the mortgagee 10 per cent interest instead of 8 per cent, contracted for, i. e., $50 instead of $40.

The plaintiffs claim that this arrangement discharged their land from liability under the mortgage to Stickney, and that they were entitled to possession, and brought this suit.

The defendant, Maggie S. Barden, under purchaser at foreclosure sale had by Stickney in 1888, obtained a deed, and went into possession. Ashley Congleton, the trustee, died in 1882, leaving children, one of whom, E. F. Congleton, became of age more than three years before this suit was brought.

In 1883, R. T. Hodges was appointed by the clerk trustee,

in place of Congleton, deceased, but had no knowledge of his appointment.

There was verdict in favor of plaintiffs, and judgment accordingly. Defendant excepted and appealed.

The evidence, issues, findings of the jury, contention of the parties and rulings of the Court are all considered in the opinion.

*Mr. A. O. Gaylord,* for appellant.
*Mr. W. B. Rodman,* for appellee.

Furches, J.  This is an action for the possession of land, in which the defendant denies title in the plaintiffs, alleges title in herself by mesne conveyances from plaintiff's ancestors, and also by color of title ripened by adverse possession, and the statute of limitations.  The facts presented are as follows:

That in June, 1880, John L. Brown and wife, M. L. Brown, conveyed the land in controversy to Ashley Congleton in trust for M. L. Brown for life, then for the issue of John L. and M. L. Brown; and if the said M. L. Brown should die without leaving issue, then for the said John L. Brown.  But this deed expressly provided that the said John L. Brown and M. L. Brown shall have full power and authority, by and with the consent of each other, to convey the same at any time, "and said trustee shall join in the said conveyance, whether the same be in fee simple or otherwise;" that on the 9th day of February, 1881, the said John L. borrowed $500 from J. B. Stickney, giving his bond due three years after date at 8 per cent, payable annually, and secured the same by a mortgage on this land, executed by John L. and M. L. Brown and the trustee, Congleton.  This mortgage was in the usual form, conveying the fee simple, with the condition

that it should become void upon the payment of said bond. On the 3d of March, 1882, the trustee, Congleton, died, leaving three minor children, two of whom were minors at the commencement of this action; the other had been of age for three years and five months when the action was commenced.

In August, 1884, the said M. L. Brown died, leaving surviving her her husband, John L., and the plaintiffs Mollie L. Fleming, Dora L., John L., and Lena M. Brown—the last three named being minors under 21 years of age except Mrs. Fleming, who was under coverture when this action was commenced, and is still.

The plaintiffs allege that this was their mother's land; that the debt was that of their father, and that the mortgage was only a security for the debt. And they further allege that the security, the mortgage lien on the land, was discharged by a contract made and entered into by Stickney, the mortgagee, and John L. Brown, the principal debtor, for an extension of time on the debt so secured by the mortgage; that this agreement was in the fall of 1884 to extend for one year for $50; that in January, 1888, Stickney sold under the mortgage when Arthur Barden bought and took deed to W. C. Ayers, who on March 3, 1888, conveyed the same to the defendant Maggie Barden, and that she has been in possession of the same ever since the date of her deed in March, 1888.

Upon the admitted facts and the evidence in the case, the Court submitted the following issues:

"1. Did Stickney agree with John L. Brown to extend time of payment of the mortgage debt from February 9, 1885, to February 9, 1886, in consideration of the payment by Brown of 10 per cent interest on the debt for the year ending February 9, 1885, to-wit, $50? Answer. Yes.

2. Was said consideration paid by Brown, and if so, when? Answer. Yes, April, 1885.

3. Did R. T. Hodges have knowledge of his alleged appointment as trustee in the proceeding entitled John L. Brown and others *ex parte* ?   Answer.   No.

4. Are the plaintiffs the owners of and entitled to recover possession of the land described in the complaint ?   Answer. Yes.

5. What is the rental value of the land for the period beginning July 4, 1894, up to the present time ?   Answer. $300.

Thereupon the Court rendered judgment that the plaintiffs are the owners of and entitled to the possession of the land, etc.

Upon the close of the evidence, the defendant moved to nonsuit the plaintiffs for the reason that the evidence, all taken to be true, did not make out a case for the plaintiffs. This was refused, and we see no error in its refusal.   It seems to us that it could hardly be disputed but what there was evidence tending to prove all the facts alleged by the plaintiffs, and sufficient to authorize the jury to find the issues submitted to them as they did.

But taking the issues as found and the facts as admitted, the case presents some very interesting questions of law, upon the solution of which the rights of the parties depend.

The evidence, with regard to the contract and consideration for the extension of time, was that the mortgagee Stickney, proposed to Brown, the principal debtor, that if Brown would pay him $50 interest instead of $40 he would extend the time 12 months.   This offer was accepted by Brown, and the money paid to Stickney's attorney or agent.   The defendant asked the Court to charge the jury that this did not constitute a contract to extend the time of payment, first, for the reason that the plaintiffs did not receive the money.   But the Court held that if the agent received it under the contract

and agreement of Stickney with Brown, this was the same as if Stickney had received it himself. And we think this must be so.

The defendant further contended that if he did receive it, that it was usurious interest; that a contract to extend time must be upon a good consideration; that the usurious payment of interest was not a good consideration, and did not support the contract, and cited *Bank v. Lineberger,* 83 N. C., 454, as authority for this contention; and it is so held in that case. But in *Carter v. Duncan,* 84 N. C., 676 (the next term after the case of *Bank v. Lineberger* had been decided), the case of *Bank v. Lineberger* was overruled; and *Carter v. Duncan* has been held to be the law ever since, and has been cited with approval in several cases, among them *Forbis v. Shepard,* 98 N. C., 111; *Hollingsworth v. Tomlinson,* 108 N. C., 245. And as was said in *Bank v. Sumner,* 119 N. C., 591, we think this doctrine has been carried far enough. But it seems to us that these cases ought to be considered as settling the doctrine in this State, and the Court below properly refused to give this instruction. This covers the defendant's prayers down to the fifth.

The fifth prayer asks the Court to instruct the jury that, as Mrs. Brown was dead when this agreement for extension of time was made, it did not have the effect to discharge the mortgage, as it was not shown that she had an administrator, or that her children had a guardian, and there was no one to pay the debt. The Court refused this prayer and the defendant excepted. We can not sustain the exception. The discharge is by operation of law; and we can not say that it shall apply in some cases and not in others. We have not been furnished with any authority for making such exception.

The sixth prayer is that the original trustee, Congleton, was dead, and that his interest descended to his heirs-at-law;

that one of them had been above the age of 21 for more than three years when this action was commenced; that where the trustee is barred, the *cestui que trust* is also barred; and that, as one of the trustees was barred, they were all barred, and the plaintiffs, though infants and *femes covert* were also barred. This is a correct proposition of law, as applied to some trusts. But taking the view of the case we do, it is not necessary for us to decide this question.

The deed of trust to Congleton expressly authorizes John L. and M. L. Brown to convey in fee simple, or any less estate, and that it shall be the duty of the trustee, Congleton, to join them in making such deed. They exercised this power in making this mortgage to Stickney, and the trustee, Congleton, joined them in making it. Congleton never had anything but the bare legal title to the land, and when this mortgage was made, which is a deed in fee simple with other trusts attached, all the estate he ever had in the land passed out of him into Stickney.

Congleton died before it is alleged that there was any discharge of the land from this debt on account of extension of time. And when he died, he had no estate to descend to his heirs. It is true that if Congleton had been the equitable owner as well as the legal owner, the equitable right of redemption would have descended to his heirs. But the only thing their father ever had was the naked legal title, and this was gone. He had nothing to descend to his heirs, and they had no interest to redeem. And indeed it does not seem to be claimed that they should have done so. But the defendants claim that the naked *legal* title was in them, and, as they did not bring suit for the *possession* of the land, the statute is a bar to plaintiff's right to recover. But as it is seen that they had no legal title to the land, and we think no

*equitable* estate, the doctrine contended for by defendants does not apply.

For the purposes of this case, it is not necessary for us to decide where the legal title was, after the discharge of the land from the debt, so that it was not in the heirs of Congleton. It may be, that when the mortgage deed was made to Stickney the trust was thereby terminated, and that Mrs. Brown became the absolute owner subject to the mortgage incumbrance. And if this was not so, it would seem that the legal estate was in the defendant; and, if so, she held the naked legal title in trust for the plaintiffs, and the statute could not run in her favor; and if both the legal and equitable estate was in the plaintiffs, the statute, or presumption, on account of possession, did not run against them on account of their infancy and coverture.

The land being discharged from the payment of the debt by reason of the extension of time, the mortgagee had no right to sell under the mortgage, unless it was the naked legal title, and the purchaser at the sale got nothing more. It is like selling after the debt had been paid. *Jenkins v. Daniel,* 125 N. C., 161. It is true that John L. Brown seems to have been at the sale, made no objection to it, and did not then let it be known that he had obtained an extension of time. And if it had been his land, it would seem that this would be an estoppel *in pais.* But it was no estoppel as against the plaintiffs who are infants and *femes covert.* It may be a hardship on the defendant, if she was an innocent purchaser without notice (which if so, is not presented by this appeal), but such is said to be "the quick-sands of the law." The judgment is

Affirmed.